**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**


**HILDELISA ANCIZA,**

      **Plaintiff,**

**vs.**                                  **Case No. 4:09cv483-RH/WCS**

**OFFICER MORALES,
et al.,**

      **Defendants.**

_____/


## AMENDED REPORT AND RECOMMENDATION

Plaintiff, a *pro se* federal prisoner, filed a second amended civil rights complaint against eight Defendants, doc. 18.  Defendants filed a motion to dismiss or in the alternative, a motion for summary judgment.  Doc. 43.  I entered an order in January directing Plaintiff to file a response by February 28, 2011.  Doc. 46.  Plaintiff was advised that she was required to demonstrate that she exhausted administrative remedies in light of Defendants having raised this affirmative defense.  Plaintiff was further advised that her failure to file a response may be cause to grant Defendants' motion.  Doc. 46.

The parties were also advised that the arguments presented in the motion, doc. 43, were appropriately considered in a motion to dismiss.  While Defendants have

presented several affidavits with the motion, only the first affidavit (attachment 1) has been considered as that affidavit concerns exhaustion of administrative remedies. Such an affidavit may be reviewed on a motion to dismiss where the issue raised is Plaintiff's failure to exhaust administrative remedies. The remaining affidavits have not been considered.

Plaintiff had not filed a response by the time I reviewed the motion to dismiss and entered a report and recommendation, doc. 50, but Plaintiff has now filed a response. Doc. 49. That response was entered on the docket a few hours before my report and recommendation was docketed, docs. 49 and 50, and I had submitted that report and recommendation for docketing unaware that a response had been received several days earlier. Though Plaintiff's response is considerably late, and no motion for leave to file an untimely response was filed, I have now reviewed Plaintiff's response, doc. 49.

For the most part, Plaintiff's response reasserts the injury Plaintiff experienced in 2007. Doc. 49, pp. 1-2. Plaintiff acknowledges that after the incident, she "was given preliminary medical care," and then "shipped to FCI Tallahassee one week later." *Id.*, at 2. Plaintiff states that she "continually complained about her injury" but received on "minimal care" and is unable to "raise her arm more than 45°, and cannot reach behind her." *Id.* Plaintiff states that her "arm is 'frozen.' " *Id.* In this response, Plaintiff does not provide clarification as to *who* Plaintiff complained to about the need for medical care and does not address the involvement of any of the Defendants named.

**Legal standards governing a motion to dismiss**

The issue on whether a complaint should be dismissed pursuant to FED. R. CIV.
P. 12(b)(6) for failing to state a claim upon which relief can be granted is whether the
plaintiff has alleged enough plausible facts to support the claim stated. Bell Atlantic
Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The
complaint's allegations must be accepted as true when ruling on a motion to dismiss,
Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992), *cert. denied*,
113 S. Ct. 1586 (1993), and dismissal is not permissible because of "a judge's disbelief
of a complaint's factual allegations." Twombly, 127 S.Ct. at 1965, *quoting* Neitzke v.
Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). However,

> To survive a motion to dismiss, a complaint must contain sufficient factual
> matter, accepted as true, to "state a claim to relief that is plausible on its
> face." *Id.* [Twombly], at 570, 127 S.Ct. 1955. A claim has facial plausibility
> when the plaintiff pleads factual content that allows the court to draw the
> reasonable inference that the defendant is liable for the misconduct
> alleged. *Id.*, at 556, 127 S.Ct. 1955. The plausibility standard is not akin
> to a "probability requirement," but it asks for more than a sheer possibility
> that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads
> facts that are "merely consistent with" a defendant's liability, it "stops short
> of the line between possibility and plausibility of 'entitlement to relief.' " *Id.*,
> at 557, 127 S.Ct. 1955 (brackets omitted).

Ashcroft v. Iqbal, 556 U.S. 1937, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

*Pro se* complaints are held to less stringent standards than those drafted by an
attorney. Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986), citing Haines v.
Kerner, 404 U.S. 519, 520-521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972).
Nevertheless, a complaint must provide sufficient notice of the claim and the grounds
upon which it rests so that a "largely groundless claim" does not proceed through
discovery and "take up the time of a number of other people . . . ." Dura

Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577

(2005), *quoted in* Twombly, 127 S.Ct. at 1966. Even though the pleading standard for a

*pro se* complaint is quite liberal, "bald assertions and conclusions of law will not suffice."

Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996).

Analysis of a motion to dismiss is generally limited to the face of the complaint

and any attachments. Brooks v. Blue Cross and Blue Shield of Florida, Inc., 116 F.3d

1364, 1368-69 (11th Cir. 1997), *citing* 5 Charles A. Wright & Arthur Miller, Federal

Practice and Procedure § 1356 at 590-92 (1969) (Wright & Miller). Under Rule 10, "a

written instrument that is an exhibit to a pleading is a part of the pleading for all

purposes." *See* FED. R. CIV. P. 10(c).[1]

---

[1] Further, "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." Brooks, 116 F.3d at 1369, *quoting* Venture Assoc. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir.1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."); *see also* Beddall v. State Street Bank and Trust Co., 137 F.3d 12, 17 (1st Cir. 1998). Guiding the decision of whether the court may consider an extrinsic document in ruling on a motion to dismiss is if the document is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged. Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005); *see also* Maxcess, Inc. v. Lucent Technologies, Inc., 433 F.3d 1337, 1340 (11th Cir. 2005) ("a document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity."). Harris v. Ivax Corp., 182 F.3d 799, 801 n. 2 (11th Cir. 1999) ("But a document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute.").

**Legal analysis**

### Dr. Lopez

Plaintiff alleges that on February 2, 2007, while she was at the FDC Miami,

Defendant Giboeux grabbed her right hand and bent her fingers backwards.  Doc. 18, p.

5.  She alleges that as a result, she has to wear an arm brace for the rest of her life.  *Id.*,

p. 6.  She alleges that Defendant Morales bent her left arm backwards and flipped her

onto the floor, and severely bruised her left arm and shoulder, causing pain and

swelling.  *Id.*  She alleges that she could not move her arm and her whole left side was

swollen.  *Id.*

Plaintiff alleges that Dr. Lopez finally answered one of her requests for medical

treatment and told her to buy anti-inflammatory medicine and pain killers from the

commissary, and she references attachment B as evidence of this.  Attachment B is an

inmate request dated May 6, 2008, directed to a Mrs. Gregg.  *Id.*, attachment B (p. 12

on ECF, the electronic case filing system).  Plaintiff's request states:

> I am tired of seeking help for medical treatment.  As you know for the last
> past year [sic].  Since Tallahassee, I've been trying to get treatment for my
> (left arm), which at this point I am unable to move and the pain and
> swelling is overwhelming.  Please I'm asking for your assistance.

*Id.*  Dr. Lopez responded, stating that Plaintiff was apparently then at the FDC Miami on

a writ from Tallahassee.  *Id.*  He said that Plaintiff has mild degenerative changes

(arthritis) and was "not going to be cured."  *Id.*  He said that "she can buy anti-

inflammatory/ and pain medicine from [the] commissary."  *Id.*

Plaintiff further alleges that an MRI of her shoulder was done on June 23, 2008,

resulting in the diagnosis: "left frozen shoulder due to trauma with a possible rotator cuff

tear." *Id.* She alleges that a specialist told her that she "would need extensive therapy and possibly surgery." *Id.*, p. 7. She alleges that the specialist told her that she "indeed had degenerative changes in the acromioclavicular (AC) joint," and that "these serious problems required therapy, treatment and more." *Id.* She states that she was given pain killers that made her health worse because she had damage to her liver from hepatitis C. *Id.* Plaintiff asserts that "as a result" she has lost the use of her left arm, the movement of her left shoulder, has only partial movement of her right wrist and fingers, and her life span has been shortened by pain killers, the only treatment given. *Id.*

Attachment C to the complaint is a grievance to Dr. Ginart, Staff Physician at FDC Miami. *Id.*, attachment C (p. 13 on ECF). There, on May 29, 2008, Plaintiff states she was told she had torn tissues. *Id.* Dr. Ginart said that she had an appointment with her assigned physician and could go to sick call if she needed more immediate attention. *Id.*

Also attached to the complaint is a response to a regional administrative remedy appeal received on February 20, 2009, and dated March 27, 2009. *Id.*, attachment D (p. 14 on ECF). The response, signed by Regional Director Sero, states that when Plaintiff was at FDC Miami on a federal writ, she was evaluated by an orthopedist and an MRI was recommended to rule out a rotator cuff tear. *Id.* When she returned to Tallahassee FCI, the MRI only revealed "mild degenerative changes in the acromioclavicular (AC) joint." *Id.* Director Sero advised Plaintiff that she had received proper medical care based upon the information found in her medical records. *Id.*

The response to Plaintiff's appeal to the national level of the Bureau of Prisons dated August 3, 2009, states that the MRI findings revealed only mild degenerative changes consistent with mild impingement syndrome, and that Plaintiff had an injection to her shoulder on January 16, 2009, and had been prescribed anti-inflammatory medication. *Id.*, attachment E (p. 15 on ECF). Finally, Warden Augustine's response of December 18, 2008, to a grievance states that Plaintiff was evaluated in Miami by an orthopedist, who recommended the MRI, and that Plaintiff's request that she have an MRI had been granted. *Id.*

The Eighth Amendment is violated only if there has been deliberate indifference to a prisoner's serious medical need. Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

> To show an objectively serious deprivation, it is necessary to demonstrate, first, an objectively "serious medical need[ ]," *Estelle*, 429 U.S. at 104, 97 S.Ct. at 291, one that, if left unattended, "pos[es] a substantial risk of serious harm," *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994), and second, that the response made by public officials to that need was poor enough to constitute "an unnecessary and wanton infliction of pain," and not merely accidental inadequacy, "negligen[ce] in diagnosi[s] or treat[ment]," or even "[m]edical malpractice" actionable under state law, *Estelle*, 429 U.S. at 105-06, 97 S.Ct. at 291-92 (internal quotation marks omitted). Similarly, to show the required subjective intent to punish, a plaintiff must demonstrate that the public official acted with an attitude of "deliberate indifference," *Estelle*, 429 U.S. at 105, 97 S.Ct. at 291, which is in turn defined as requiring two separate things: "aware[ness] of facts from which the inference could be drawn that a substantial risk of serious harm exists[ ] and . . . draw [ing of] the inference," *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979. Ultimately, there are thus four requirements: an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts.

Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000), *cert. denied*, 121 S.Ct. 774

(2001). A "'serious' medical need is one that has been diagnosed by a physician as

mandating treatment or one that is so obvious that even a lay person would easily

recognize the necessity for a doctor's attention." Hill v. Dekalb Regional Youth

Detention Center, 40 F.3d 1176, 1187 (11th Cir. 1994), quoting Laaman v. Helgemoe,

437 F.Supp. 269, 311 (D. N.H. 1977). A prisoner's medical need may be found to be

serious if the failure to treat the condition could result in significant further injury or an

unnecessary infliction of pain. McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992).

Thus, viewing all of the matters alleged in the complaint and the attachments as

true, Plaintiff has not alleged enough plausible facts to show a serious medical need.

The incident giving rise to the alleged injury occurred on February 2, 2007, in Miami,

and the MRI apparently did not occur until about two years later, in Tallahassee. The

MRI did not reveal a rotator cuff tear or any other traumatic injury. It revealed only

chronic degenerative arthritic changes that plausibly would not have been caused by

trauma. Plaintiff was given anti-inflammatory medications, a facially appropriate

response for arthritic pain. Plaintiff has not alleged any plausible facts to support her

claim that her liver has been damaged due to taking these medications.[2]

Likewise, Plaintiff has not alleged enough plausible facts to support her claim that

Dr. Lopez was deliberately indifferent to any serious medical need. Plaintiff has not

alleged that Dr. Lopez was her treating physician in Miami, and has not alleged what

---

[2] In Plaintiff's response, she states that she "has experienced pain in her liver
and receives monthly tests, but no professional care for relief or cure." Doc. 49, p. 2.
For Plaintiff to have monthly testing for her liver, she is necessarily having professional
care. The allegation of pain, accepted as true, does not give rise to a plausible claim of
denial of medical care for a serious liver condition.

she did in the months after the alleged injury to make Dr. Lopez aware of a serious medical need. The complaint fails to state a federal claim against Dr. Lopez.

**Dr. Ginart**

Plaintiff alleges that Dr. Ginart was the medical director at FDC Miami, and she states she wrote requests for medical treatment and Dr. Ginart told her "to go to sick call and talk with [her] assigned physician." Doc. 18, p. 7. Plaintiff then make the conclusory assertion that Dr. Ginart "deliberately chose to ignore my complaints and the seriousness of my complaints and medical problems." *Id.*

Plaintiff references "attachment C" which she provided with her complaint. *Id.* That attachment is an inmate request to Dr. Ginart, dated May 29, 2008. Doc. 18, attachment C (p. 13 on ECF). Plaintiff referenced the February 2, 2007, incident and stated the problems she experienced after the incident with her arm. *Id.* Plaintiff said she was not given pain relief until five days after the incident, and she reported that she had x-rays and then was told that she "had torn tissues [but] nothing was done about it . . . ." *Id.* Dr. Ginart responded to Plaintiff's inmate request and advised Plaintiff that she "will have an appointment with [her] assigned physician, discuss your request at that time." *Id.* Further, Dr. Ginart directed that if Plaintiff felt she "must be seen before [her] appointment date," she should sign up for sick call. *Id.*

Dr. Ginart's response to Plaintiff's grievance, directing Plaintiff as to the proper procedure for being examined by a doctor, especially in light of the fact that Plaintiff complained about an injury that then was nearly a year and four months old at that time, is insufficient to state a claim for being deliberately indifferent to Plaintiff's serious medical needs by Dr. Ginart. There is nothing within that inmate request to alert this

Defendant to a serious medical need as opposed to a long-existing condition requiring only routine medical care. There are no allegations that Plaintiff was not provided appropriate care for the medical needs that did have following that request. Therefore, the motion to dismiss should be granted as to Defendant Ginart.

### Dr. Carbonel

Plaintiff's claim against Defendant Carbonel (at FCI Tallahassee) is that he did not provide treatment for Plaintiff as was recommended by a specialist who reviewed Plaintiff's MRI, extensive therapy and possible surgery. Doc. 18, pp. 6-6a (pp. 7-8 on ECF). Plaintiff states that Dr. Carbonel "chose not to act upon the recommendations of the orthopedist specialist that performed the MRI." *Id.* This claim fails for the same reason that the claim against Dr. Lopez fails. Plaintiff has not alleged sufficient facts from which it may be plausibly inferred that she had a serious medical need for treatment, other than chronic arthritis that was appropriately treated with anti-inflammatory medications.

### Defendants Augustine, Holt,[3] and Watts

Plaintiff's only allegations against Defendants Augustine, Holt, and Watts concern their responses to Plaintiff's grievances. Doc. 18, pp. 6a-6b (pp. 8-9 on ECF). These Defendants are prison administrators and are not trained in medicine. Plaintiff does not allege otherwise.

---

[3] Plaintiff sued a Defendant Sero as Regional Director, doc. 18, since she was unable to read his signature on attachment D and the word "SERO" followed the signature. Defendants' motion shows that the Regional Director's name is Ronald E. Holt. Doc. 43, p. 1.

Defendant Augustine's response to Plaintiff's grievance was to note that Plaintiff had been seen by medical staff during the prior month and had an upcoming appointment. Doc. 18, attachment A (p. 11 on ECF). Plaintiff was encouraged to discuss her concerns with her physician and, if necessary, sign up for sick call. That response is not deliberate indifference to Plaintiff's health needs. The motion to dismiss should be granted as to Defendant Augustine.

Plaintiff's claim against the Regional Director Holt is the same as was alleged against Defendant Augustine. Plaintiff alleged that she filed an appeal to the Director and "was ignored." Doc. 18, p. 6a (p. 8 on ECF). However, attachment D to the complaint reveals that Defendant Holt did not ignore Plaintiff's grievance appeal. *Id.*, attachment D (p. 14 on ECF). Rather, Defendant Holt investigated Plaintiff's claims and provided a response. *Id.* The response noted that Plaintiff's complaints had been considered, Plaintiff had been referred to a specialist, she had diagnostic tests including an MRI, and she had been provided medical care. *Id.* She was directed to discuss her concerns with her physician at her next scheduled appointment and, once again, Plaintiff was advised to report to sick call for additional problems. *Id.* The motion to dismiss should be granted as to Defendant Holt.

Plaintiff's claim against Defendant Watts, the Administrator at the National appeals level, should be dismissed for the same reasons. While Plaintiff alleged that Defendant Watts ignored her complaints and chose not to investigate Plaintiff's claims, the attached grievance submitted by Plaintiff with the complaint reveals that the relevant portions of Plaintiff's medical file *was* reviewed, and Plaintiff was provided a response to

her appeal. Thus, Plaintiff's complaint was not ignored and this Defendant was not deliberately indifferent to Plaintiff's needs.

**Defendants Morales and Gilboeux**

The two claims remaining in this case are against Defendants Morales and Gilboeux. Doc. 18. Plaintiff contends that both of those Defendants used excessive force against her. *Id.*, pp. 5-6 (pp. 6-7 on ECF).

Defendants argue that the claim against Defendant Morales should be dismissed because he has not been served as required by Rule 4. Plaintiff has not responded to this argument, but the docket reveals that service was not carried out. An unexecuted return was filed in November indicating that the address was insufficient address. Doc. 29. Another order was entered, however, finding that further orders concerning service should await the filing of an answer to Plaintiff's complaint. Doc. 30. Plaintiff should not be penalized for that decision.

I noted, however, in the report and recommendation, doc. 50, that Plaintiff had not filed anything in this case since submission of her second amended complaint on August 9, 2010. Doc. 81. More than seven months had passed since Plaintiff filed a response or motion or any document indicating her intent to continue this litigation. Plaintiff's failure to have responded in timely fashion to the motion to dismiss suggested that Plaintiff had abandoned this litigation. At the eleventh hour though, Plaintiff has now filed her response, doc. 49. Plaintiff still has not shown that she exhausted administrative remedies as to these claims of excessive use of force.

The claim against Defendant Morales, as well as the claim against Defendant Gilboeux, should be dismissed for failure to exhaust administrative remedies pursuant

to 42 U.S.C. § 1997e(a).  Defendants have presented an affidavit to support the

allegation that Plaintiff did not exhaust remedies as to her claim of excessive force.

Doc. 43.  That affidavit reveals that Plaintiff "has filed five formal administrative

remedies since she has been incarcerated" in the B.O.P.  Doc. 43-1, p. 2.  All five of

those grievances concern the denial of medical care and do not concern the use of

force.  Plaintiff acknowledges in her response that she filed an informal resolution, a

grievance to the warden, and to the region, and then to Washington, D.C.  Doc. 49, p. 3.

Plaintiff does not provide any argument or demonstrate having filed any grievances

specifically concerning the use of force against her.  Plaintiff's response only indicates

the grievances concerned her medical issues.  Doc. 49, p. 3.

　　　Plaintiff is housed within the Bureau of Prisons [hereinafter "B.O.P."], which has

an administrative grievance program.  *See* 28 C.F.R. § 542.10 (2009).  The Prison

Litigation Reform Act provides that "[n]o action shall be brought with respect to prison

conditions under section 1983 of this title, or any other Federal law, by a prisoner

confined in any jail, prison, or other correctional facility until such administrative

remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The exhaustion

requirement of § 1997e(a) is not jurisdictional.  Bryant v. Rich, 530 F.3d 1368, 1374

n.10 (11th Cir.), *cert. denied*, 129 S.Ct. 733 (2008) (citing Woodford v. Ngo, 548 U.S.

81, 126 S.Ct. 2378, 2392, 165 L.Ed.2d 368 (2006)).  Exhaustion, however, is

mandatory, whether the claim is brought pursuant to § 1983 or Bivens.  Alexander v.

Hawk, 159 F.3d 1321, 1324-26 (11th Cir. 1998); Woodford v. Ngo, 548 U.S. at 85, 126

S.Ct. at 2382.

"The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." <u>Turner v. Burnside</u>, 541 F.3d 1077, 1082 (11th Cir. 2008). Factual disputes concerning the exhaustion of administrative remedies may be decided by the court sitting as fact-finder, "so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." <u>Bryant</u>, 530 F.3d at 1373-74, 1376. Even though evidence may be presented to support or refute a contention that a prisoner has not exhausted the grievance process, exhaustion is a "matter in abatement and not generally an adjudication on the merits," thus, it should be raised and treated as a motion to dismiss, not a summary judgment motion. *Id.*, at 1374-75.

In summary, therefore, the remaining claims against Defendants Morales and Gilboeux should be dismissed for failure to exhaust administrative remedies.

**Conclusion**

Accordingly, it is **RECOMMENDED** that Defendants' motion to dismiss, doc. 43, be **GRANTED**, and this case **DISMISSED** as set forth above for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2) and for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997(e), and that the order adopting this report and recommendation direct the Clerk of Court to note on the docket that this cause was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**IN CHAMBERS** at Tallahassee, Florida, on April 13, 2011.

 s/     William C. Sherrill, Jr. 
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**